IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-01668-WYD

RAUL R. GUTIERREZ,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.[1]

**ORDER**

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for Supplemental Security Income ["SSI"] benefits.  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.   BACKGROUND

Plaintiff, born on December 25, 1956, filed for SSI benefits on November 15, 2008, alleging disability beginning October 1, 2007.  (Transcript ["Tr."] 116.)  Disability was alleged due to arthritis, a back injury, headaches, emphysema (lung disease), and depression.  (*Id.* 140.)  After Plaintiff's application was denied initially, he requested a hearing before an administrative law judge ["ALJ"].  (*Id.* 32, 38.)  A hearing was held on

---

[1]   Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant pursuant to Fed. R. Civ. P. 25(d).

April 8, 2010 (*id.* 22-30), and the ALJ issued a decision on June 2, 2010, finding that Plaintiff was not disabled at step five of the sequential evaluation. (*Id.* 8-17.)

More specifically, at step one the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his application date. (Tr. 10.) At step two, the ALJ found that Plaintiff's back disorder, right knee problems, emphysema, affective disorder and substance abuse were severe impairments. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments did met or medically equaled one of the listed impairments. (*Id.*) *See* 20 C.F.R. pt. 404, subpart P, app. 1.

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"]. (Tr. 10-16.) He found that Plaintiff could perform light work "with occasional bending, squatting, kneeling, and climbing; no use of food/leg controls; minimal exposure to dust, smoke, chemicals and fumes; and no dealing with the general public. (*Id.* 10.) The ALJ noted that Plaintiff was 50 years old on the date his application for benefits was filed, which is defined as an individual closely approaching advanced age, and that Plaintiff has a limited education. (*Id.* 17.)

At step four, the ALJ stated Plaintiff "was not considered to have past relevant work as he has not worked since 1998. (Tr. 16.) At step five, relying on vocational expert testimony, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy, including products assembler, inspector/hand packer, and bottle line attendant. (*Id.* 16-17.) Thus, the ALJ found that

Plaintiff was not disabled "since October 31, 2007, the date the application was filed." (*Id.* 17.)[2]

On May 2, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 4), making the ALJ's June 2010 decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. § 422.210(a). Plaintiff timely requested judicial review, and this appeal followed.

II.   ANALYSIS

   A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for

---

[2] It appears the application was actually filed in November 2007, but this is not relevant to the determination at issue.

reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A post-hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance. *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). Thus, I will not consider post-hoc arguments of the Commissioner in reaching my decision.

    B.    <u>Whether the ALJ's Decision Should Be Affirmed</u>

        1.    <u>Weighing of the Medical Opinions</u>

Plaintiff argues that the ALJ erred in connection with his weighing of the medical opinions. Specifically, he argues that the ALJ failed to account for all the restrictions stated by examining physician Dr. Campbell, failed to weigh the opinion of the first agency physician who examined Plaintiff, and did not give valid reasons for rejecting the opinions of treating psychiatrist Dr. Goos and examining physician Dr. Madsen. I agree that the medical opinions were not properly weighed, constituting reversible error.

        a.    <u>Physical Restrictions</u>

I first address Plaintiff's physical restrictions. Examining physician Velma Campbell, M.D. is the only examining physician that stated an opinion of Plaintiff's physical restrictions. In other words, no treating physician offered such an opinion. Dr. Campbell stated the opinion that Plaintiff can stand and/or walk for less than four hours per day, lift twenty pounds for less than two hours per day, and reach less than

two hours per day.  (Tr. 232.)  Dr. Campbell also imposed restrictions on bending, stooping, kneeling, and reaching which the ALJ found "were given due to the claimant's back, knee, and shoulder pain.  (*Id.*)  Conversely, the ALJ found that the restrictions imposed by Dr. Campbell as to not climbing ladders or working at unprotected heights were "[b]ased entirely on the claimant's statements concerning dizziness."  (*Id.* 12.)  The ALJ then stated that he gave "[s]ome weight . . . to Dr. Campbell's physical assessment that is supported by objective medical findings."  (*Id.*)

Consistent with his decision to give some weight to Dr. Campbell's opinion, the ALJ adopted her restrictions limiting Plaintiff to occasional bending, squatting, kneeling, and climbing.  (Tr. 10.)  He also explained why he did not give weight to her opinion that Plaintiff cannot climb ladders or work at unprotected heights.  (*Id.* 12.)  However, he gave no reason for rejecting her opinion that Plaintiff can only stand/walk for less than four hours per day or reach for less than two hours per day.  Having assigned some weight to Dr. Campbell's opinion, the ALJ was required to explain why he adopted some, but not all, of her limitations.  *Chapo v. Astrue*, 682 F.3d 1285, 1291-92 (10th Cir. 2012) (ALJ cannot discount a portion of a physician's limitations "with no explanation at all as to why one part of h[er] opinion was creditable and the rest was not").

The restrictions the ALJ ignored are material to Plaintiff's claim.  The restriction of standing/walking to less than four hours per day may not be sufficient to meet the requirements of light work.  Most light work involves standing or walking most of the day.  SSR 83-14, 1983 WL 31254, at *4.  Indeed, because Plaintiff is over 50 years of age, has a limited education, and has no transferable skills because he has no past

relevant work (see Tr. 16, findings 5-7), Grid Rule 201.09 would direct a finding of disability. This was acknowledged by the Commissioner's disability examiner, Ms. Kelley. (*Id.* 263.) Also, the limitation imposed by Dr. Campbell of reaching no more than two hours per day would be close to the definition of occasional, but not close to frequent.[3] The three jobs the ALJ found Plaintiff could do require frequent reaching.

I further note that the ALJ gave "significant weight" to the opinion of state agency physician Alan Ketelhohn, M.D., who opined that Plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds, "could stand/walk six hours of an eight hour day and sit for six hours of an eight hour day", that Plaintiff "had some limitations in his ability to reach in all directions, handle and finger", and that he "should avoid concentrated exposure to extreme cold and hazardous work environments." (Tr. 13.) The ALJ found that this was "compatible with light exertional activity" and was "well supported." (*Id.*)[4]

However, again, the ALJ did not adopt all the restrictions imposed by state agency physician Dr. Ketelhohn. For example, the RFC did not include limitations in Plaintiff's ability to reach in all directions, handle and finger, which I note was supported in part by Dr. Campbell's restriction on reaching. Again, an ALJ may not "'pick and

---

[3] Two hours per day would be one quarter of the eight hour work day. "Occasionally" is defined as "up to 1/3 of the time." U.S. Dep't of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991) at 1013; SSR 83-10, 1983 WL 31251, at *5. "Frequently" is defined as between 1/3 and 2/3 of a eight hour work day. SSR 83-10, 1983 WL 31251, at *6.

[4] He noted in that regard that the "limitations were based on the medical records showing the claimant has emphysema; shoulder tenderness with nearly full range of motion; some osteoarthritic tenderness of the hands with nearly normal grip strength; some decreased range of motion of the lumbar spine; negative straight leg raising; and moderate osteoarthritis of the right knee with range of motion being within normal limits." (*Id.*)

choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'" *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)).

Moreover, I agree with Plaintiff that the ALJ erred in disregarding the opinion of the first state agency physician who opined as to Plaintiff's impairments and not explaining the circumstances in which Dr. Ketelhohn, the second agency physician, made his findings. Thus, by way of background, the Commissioner's non-physician disability examiner, Jade Kelley, completed an RFC assessment for medium exertion, and asked the agency physician to review her assessment and sign off on it. (Tr. 261.) The first state agency physician, James McElhinney, M.D., modified Ms. Kelley's RFC assessment before signing it. (*Id.* 262.) Ms. Kelley then contacted Dr. McElhinney, pointing out that his modified RFC limits Plaintiff to four to six hours of standing, placing Plaintiff in the sedentary exertion category which would result in an allowance of benefits. (*Id.* 263.) Ms. Kelley told Dr. McElhinney that she believed the consultative examination by Dr. Campbell was only minimally limiting, and asked Dr. McElhinney to change his standing restriction to about six hours per day so that Plaintiff would be in the light exertional category. (*Id.*) Dr. McElhinney responded that he reviewed Dr. Campbell's findings and still believed that restricting standing to four to six hours per day was reasonable. (*Id.* 264.)

Rather than accepting Dr. McElhinney's assessment, Ms. Kelley sought "clarification" of Plaintiff's standing restriction from agency physician Dr. Ketelhohn. (Tr. 265.) Dr. Ketelhohn signed the agency's standard physical RFC assessment containing

a standing capacity of about six hours per day.  (*Id.* 270.)  There is no evidence that he was made aware of Dr. McElhinney's contrary assessment.  I find that the ALJ erred in completely ignoring Dr. McElhinney's findings and in not noting the conflict in the record between the state agency physicians.  This error is particularly significant because Dr. McElhinney's limitations would have merited a finding of disability under the Grid Rules.  *See Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") (quotation omitted).  Accordingly, I find that this is another basis for remand.  I also find significant the fact that it appears Ms. Kelley shopped around for a second opinion after Dr. McElhinney refused to give the opinion she wanted, *i.e.*, a finding that Plaintiff would not be disabled under the Grid Rules.  This should also be addressed by the ALJ.

Finally as to the state agency physicians, the ALJ must on remand take into account the fact that the opinion of an agency physician who has never seen the claimant is generally entitled to the least weight of all.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  An ALJ's reliance on an agency medical consultant's opinion is reasonable only insofar as that opinion is supported by evidence in the case record.  *Lee v. Barnhart,* 117 F. App'x 674, 687 (10th Cir. 2004) (citing SSR 96-6P, 1996 WL 374180, at *2).  In other words, the agency consultant's opinion must itself "find adequate support in the medical evidence."  *Id.*  In this case, it is unclear what, if any, evidence supports state agency physician Dr. Ketelhohn's opinion that Plaintiff can essentially perform light work.

b.      Mental Restrictions

I now turn to Plaintiff's mental impairments. Plaintiff first argues that the ALJ erred in rejecting the opinion of treating psychiatrist Dr. Goos, who opined that Plaintiff had moderate, marked, and extreme impairments in various areas of mental functioning. (Tr. 328-29.) The ALJ rejected Dr. Goos' opinion in its entirety. I find error with this, as the ALJ improperly did not determine whether Dr. Goos' opinion was entitled to controlling weight.

Tenth Circuit has made clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ "must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "The initial determination the ALJ must make with respect to a treating physician's medical opinion is whether it is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates. *Id.* "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* "But finding such deficiencies to resolve the controlling-weight question against a claimant does not end the inquiry." *Id.*

"Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular

purpose, for the weight assigned." *Krauser,* 638 F.3d at 1330. "If this is not done, a remand is required." *Id.* As further explained:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to " controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ ] 404.1527 and 416.927. *In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.*

*Id.* (citing SSR 96–2p, 1996 WL 374188, at *4 (emphasis added)). "Thus, a deficiency as to the conditions for controlling weight raises the question of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id.* at 1330-31.

In the case at hand, the ALJ did not follow the proper sequential evaluation in determining what weight to give Dr. Goos' opinion. He did not make an initial determination about whether Dr. Goos' opinion was entitled to controlling weight. It also does not appear that the ALJ gave the opinion of Dr. Goos' deference as required and weighed the relevant factors. This error is particularly egregious because the vocational expert testified that a person with similar marked (or extreme) mental impairments would not be able to work. (Tr. 27-28.)

I also find that the reason given by the ALJ for rejecting Dr. Goos' opinion is not supported by the record. The ALJ stated that the opinion was "not given any weight as the marked and extreme limitations are not supported by clinical notes or test findings and no supportive documentation was provided." (Tr. 13.) The ALJ ignored, however, the fact that Dr. Goos noted his opinion was based on his initial psychiatric interview

with mental status exam and several follow up sessions for medication management. (*Id.* 327.)  Dr. Goos further explained what impairments he diagnosed from his treatment, including the fact that Plaintiff is depressed and has impairments in sleep, appetite, energy and motivation, irritability, anger and memory problems.  (*Id.*)  He also stated that anhedonia is persistent, and that Plaintiff is hopeless, feels worthless, and has suicidal ideation.  (*Id.*)  The ALJ not only ignored these findings in Dr. Goos' assessment, but ignored the fact that the treatment notes support these findings.

Thus, during his treatment of Plaintiff, Dr. Goos diagnosed "Major Depression, recurrent severe without psychoses/Impulse control disorder NOS" and assigned Plaintiff GAF scores of 46 and 43.  (Tr. 317-18, 210-11.)[5]  Dr. Goos also stated that he wrote a letter "in regards to the serious deficits in memory and thought processes caused by [Plaintiff's] profound depression" (*id.* 318, 323), and that he prescribed Plaintiff a medication for panic. (*Id.* 323.)  While Dr. Goos' opinions in the evaluation at issue are contained in a check-the-box form, he "actually examined the patient [*i.e.*, Plaintiff] and recorded [his] clinical assessments."  *Anderson v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009).  He also made clear that the form he completed was based on his treatment and examination of the claimant, and the form did not ask for rationales or provide space for them.  *Id.*  Thus, the failure of Dr. Goos to provide clinical observations or supporting documentation in connection with the evaluation "does not

---

[5] GAF", referring to "Global Assessment of Functioning", is a clinician's judgment of an individual's level of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) at 32.  A GAF score of 41-50 indicates serious symptoms such as inability to keep a job.  *Id.* at 34; *Langley v. Barnhart*, 373 F.3d 1116, 1122 n.4 (10th Cir.2004).

provide a sound foundation for the inference—which the ALJ apparently adopted—that [his] assessment w[as] of limited reliability, nor does it support the notion that the results that [Dr. Goos] reported were based upon something less than a 'thorough [psychiatric] examination.'" *Id.* (quotation omitted). The ALJ appears to have improperly substituted his own judgment for that of Dr. Goos. *See Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996) ("the ALJ clearly overstepped his bounds when he substituted his medical judgment for that of" the physician when he determined that the test results were not adequate to support the physician's diagnosis).

I also note that there is other evidence that supports Dr. Goos' findings. Thus, consultative examiner Dr. Madsen diagnosed "Depressive Disorder NOS (Bipolar Features) and Impaired Intellectual Functioning" and assessed a GAF score of 50, again indicative of severe problems. (Tr. 228.) He also opined that Plaintiff would not be able to maintain a regular work schedule, focus or concentrate at work, relate to peers, co-workers, supervisors, or the general public" but "should be able to manage his own funds". (*Id.* 228, 12.)

The ALJ stated, "No weight is given to [Dr. Madsen's] unsupported and inconsistent assessment that is contradictory to the evidence of record (see Exhibits B9F, B10F.)" (Tr. 12.) While the ALJ stated the report was unsupported, that is not accurate. The report was supported by Dr. Madsen's examination of Plaintiff, and the diagnoses and objective findings that he made as to Plaintiff: "[m]otor behavior and speech are slowed", "[h]is ability to do arithmetic functions in his head is impaired", "[l]evel of intellectual functioning is impaired". (*Id.* 227.) Further, it is unclear why the

ALJ believes the report is inconsistent. While he points to the finding that Plaintiff can manage his own funds despite the other difficulties noted by Dr. Madsen, this does not necessarily show any inconsistency. The Tenth Circuit is clear that "'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'" *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (emphasis in original) (quotation omitted). Finally, contrary to the ALJ's finding, the opinion of Dr. Madsen is supported by other evidence in the record.

In addition to being supported by treating psychiatrist Dr. Goos' opinion, Dr. Madsen's opinion is supported by the opinion of Dr. Campbell that Plaintiff's psychological conditions might interfere with his ability to cope, learn, and interact appropriately. (Tr. 12.) While the ALJ gave "[n]o weight" as to this opinion as "Dr. Campbell is not qualified to make mental evaluations" (*id.*), this is not documented by the record. An examining physician may be qualified to render opinions as to mental impairments, even if he or she is not a psychiatrist or mental health provider per se. The ALJ would have to clarify this issue with Dr. Campbell before her opinion could be rejected on that ground.  See *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citing 20 C.F.R. § 404.1512(e)(1)).

Finally, Dr. Madsen's opinion, as well as Dr. Goos' opinion, are supported by the opinions of psychologists Jose Vega, Ph.D. and Carlos Rodriguez, Ph.D. They examined Plaintiff for purposes of determining eligibility for benefits from the Colorado

Aid to the Needy Disabled program, and both certified Plaintiff is disabled and unable to work. (*Id.* 277, 278, 281.) While these opinions are on an issue reserved to the Commissioner and are thus not entitled to controlling weight, the ALJ still was required to "provide an evaluation of the. . . opinion[s] and state his reasons for either accepting or rejecting" them. *Knight v. Astrue*, 388 F. App'x 768, 772 (July 21, 2010) (unpublished); *see also Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

The only opinion that may have been inconsistent, at least in part, with the opinions of Drs. Madsen and Goos was that of nonexamining state agency physician, James J. Wanstrath, Ph.D. Dr. Wanstrath opined that Plaintiff was moderately impaired in the broad categories of social interaction, and concentration, persistence or pace. (Tr. 249.) He also found that Plaintiff had moderate impairments in handling detailed instructions, working in coordination or proximity to others, interacting appropriately with supervisors, coworkers and the public, and maintaining socially appropriate behavior. (*Id.* 235-36.) This portion of Dr. Wanstrath's opinion actually supports Drs. Madsen and Goos' opinions. Dr. Wanstrath also opined that Plaintiff could follow simple instructions, sustain ordinary routines, and make simple decisions, but could not work closely with supervisors or coworkers (contact with such people could not be frequent or prolonged). (*Id.* 237.)

The ALJ did not, however, discuss Dr. Wanstrath's opinion or give it any weight. Thus, it could not be substantial evidence to reject the opinion of the treating and examining psychiatrists/physicians. Moreover, even if the ALJ meant to accept

Dr. Wanstrath's opinion by including in the RFC that Plaintiff could not deal with the general public, this was only a small portion of the limitations Dr. Wanstrath imposed. The ALJ could not pick and choose from Dr. Wanstrath's list of impairments without explanation. *See Chapo*, 682 F.3d at 1291-92.[6]  Again, I note on remand that if the ALJ intends to rely on the opinion of a state agency medical provider, it must be supported by medical evidence in the record. SSR 96-6P, 1996 WL 374180, at *2.

2. <u>Assessment of RFC</u>

In addition to the above errors, Plaintiff argues that the ALJ erred in connection with the RFC assessment as he made a conclusory statement that Plaintiff is capable of performing light work without making any specific findings as to the amount of weight Plaintiff can lift or how long he can stand. I agree.

An RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing *specific* medical facts. . . and nonmedical evidence." *Southard v. Barnhart*, 72 F. App'x 781, 784 (10th Cir. July 28, 2003) (unpublished) (citing SSR 96-8p, 1996 WL 374184, at *7). The ALJ also must conduct a "function-by-function assessment based on all the relevant evidence." *Id.* This assessment is required before determining what exertional category of work is allowed by that RFC. SSR 96-8, 1996 WL 374184, at *7. The ALJ erred by failing to make this function by function assessment before finding that Plaintiff can perform light work, particularly

---

[6] Even though the Tenth Circuit has recently held that an ALJ is only required to consider the limitations imposed in Section III of the agency worksheet, *Sullivan v. Colvin*, No. 12-5147, 2013 WL 950970, at *3 (10th Cir. March 13, 2013), the ALJ did not consider all the limitations Dr. Wanstrath imposed in that section.

given the contradictory evidence regarding Plaintiff's physical restrictions.  I also find error as the ALJ failed to link his RFC findings to specific evidence in the record.  *See Conkle v. Astrue*, 297 F. App'x 803, 806 (10th Cir. 2008) (unpublished).  Thus, the RFC does not provide for meaningful review, and the errors must be rectified on remand.

III.    CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly analyze and weigh the medical evidence or assess Plaintiff's RFC.  I further find that this case must be reversed and remanded for further fact finding, rather than reversed for an immediate award of benefits as requested by Plaintiff.  *See Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989) (outright reversal and remand for immediate award of benefits is appropriate only when additional fact finding would serve no useful purpose.).  It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated:  September 16, 2013

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge